IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PHILIP J. CHARVAT,

      **Plaintiff,**

v.

NMP, LLC, et al.

      **Defendants.**

Case No. 2:09-cv-209

JUDGE EDMUND A. SARGUS, JR.

MAGISTRATE JUDGE TERENCE P. KEMP

## OPINION AND ORDER

Plaintiff Philip Charvat brings this action against Defendants NMP, LLC and Media Synergy Groups, LLC, alleging that they engaged in unlawful telemarketing practices by placing 31 calls to Plaintiff's residence. Plaintiff alleges that Defendants knowingly committed 276 violations of federal and state statutes, including the Telephone Consumer Protection Act ("TCPA") and the Ohio Consumer Sales Practice Act ("CSPA"). This matter is before the Court on Defendant's Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) (Document 22). For the reasons stated below, the Court finds that it lacks jurisdiction over this case and **GRANTS** Defendants' Motion to Dismiss.

I.

Between September 12, 2008 and December 10, 2008, Plaintiff received from Defendants 31 phone calls on his home phone line inviting him to join the NASCAR Membership Club. On September 20, 2008, during one of these phone calls, Plaintiff requested to be placed on Defendant's "Do Not Call List." Plaintiff alleges that each of Defendants' calls constitutes between one and five statutory violations. The alleged violations include Defendants' failure to do the following: (1) to obtain Plaintiff's prior express consent or invitation before calling, (2) to voluntarily state the caller's name, (3) to maintain a record of Plaintiff's requests that the caller

place him on the Do Not Call List, (4) to honor such requests, and (5) to state the caller's purpose at the beginning of each call. Plaintiff brings 123 claims against Defendants under the TCPA, for total statutory damages of $184,500, and 153 claims under the CSPA, for total statutory damages of $30,600. Plaintiff also seeks attorney's fees in the amount of at least $50,000 pursuant to Ohio Revised Code § 1345(F) as well as damages for common law invasion of privacy.

Defendants have moved for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. They also seek dismissal of Plaintiff's state law claim under Rule 12(b)(6), asserting that Plaintiff failed to state a claim upon which relief can be granted. The Court must first address the question of subject matter jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

## II.

Defendants assert that because Plaintiff cannot satisfy the amount in controversy requirement for diversity jurisdiction, this Court lacks subject matter jurisdiction to hear Plaintiff's claims. District courts have subject matter jurisdiction over cases arising under federal law as well as cases involving citizens of different states when the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332. Plaintiff contends that this Court has both federal question jurisdiction and diversity jurisdiction.

### A. Federal Question Jurisdiction

The TCPA provides that "[a] person . . . may, if otherwise permitted by the laws or rules of court of a State, bring [an action] in an appropriate court of that State." 47 U.S.C. § 227(b)(3), (c)(5). While this provision clearly authorizes an action in state court, it does not explicitly provide whether a federal district court has federal question jurisdiction over such an action. In an unpublished opinion in 2004, a unanimous panel of the Sixth Circuit referred to the *lack* of

2

federal question jurisdiction over TCPA claims as "well-settled." *Dun-Rite Constr., Inc.*, No. 04-3216, 2004 U.S. App. Lexis 28047, *5 (6th Cir. Dec. 16, 2004). The Sixth Circuit recently questioned that conclusion in a published opinion, however, stating that "the existence or non-existence of federal-question jurisdiction over private TCPA claims is not a settled question." *Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 627 n.2 (6th Cir. 2009) (declining to address the issue because it had not been raised).

At least "six federal circuit courts have concluded that federal courts do not have federal-question jurisdiction over private TCPA claims." *Charvat*, 561 F.3d at 627 n.2 (citing *Murphey v. Lanier*, 204 F.3d 911, 915 (9th Cir. 2000); *Foxhall Realty Law Offices, Inc. v. Telecomms. Premium Servs., Ltd.*, 156 F.3d 432, 435 (2d Cir. 1998); *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 519 (3d Cir. 1998); *Nicholson v. Hooters of Augusta, Inc.*, 136 F.3d 1287, 1289 (11th Cir. 1998); *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 514 (5th Cir. 1997); *Int'l Sci. & Tech. Inst., Inc. v. Inacom Commc'ns, Inc.*, 106 F.3d 1146, 1156 (4th Cir. 1997)).

However, the Sixth Circuit noted in dicta that the Seventh Circuit's 2005 decision in *Brill v. Countrywide Home Loans, Inc.* and then-Judge Alito's dissent from the Third Circuit's 1998 opinion in *ErieNet, Inc. v. Velocity Net, Inc.* "raise serious questions about the majority view." *Charvat*, 561 F.3d at 627 n.2 (citing *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 450–51 (7th Cir. 2005) (Easterbrook, J., joined by Posner & Rovner, J.J.); *ErieNet*, 156 F.3d at 521–23 (Alito, J., dissenting)).

While the question may not be "well-settled," this Court agrees with the panel in *Dun-Rite* that no federal question jurisdiction exists for TCPA claims. This Court finds that neither *Brill* nor then-Judge Alito's dissent in *ErieNet* supports a conclusion that the Court has federal question jurisdiction over TCPA claims.

3

### 1. *Brill*

In *Brill*, the Seventh Circuit acknowledged that six courts of appeals had held that no federal question jurisdiction exists for TCPA claims. *Brill*, 427 F.3d at 450. The court found, however, that those decisions could not be reconciled with the Supreme Court's decisions in two cases: *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), and *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003).

In *Grable*, the Court held that federal question jurisdiction did not depend on the existence of a private right of action under federal law where the parties raised a disputed issue of federal tax law. *Grable*, 545 U.S. at 310. The Court finds that this case is distinguishable from *Grable*. In that case, the Supreme Court emphasized "the national interest in providing a federal forum for federal tax litigation." *Id.*, 545 U.S. at 310. The plaintiff had sued the Internal Revenue Service and the purchaser of his property at a tax foreclosure sale. The case was originally filed as a quiet title in state court but involved a disputed issue of federal tax law. Here, Plaintiff's state law claims implicate no federal statutes or national interest in uniformity of the tax code in the various states.

In *Breuer*, the plaintiff contended that his Fair Labor Standards Act (FLSA) case was improperly removed to federal court because the FLSA provided that an action "may be *maintained* . . . in any Federal or State court of competent jurisdiction." *Breuer*, 538 U.S. at 694 (quoting 29 U.S.C. § 216(b)) (emphasis added). The plaintiff asserted that the word "maintained" constituted an express exception to the general authorization of removal under 28 U.S.C. § 1441(a). The Supreme Court disagreed, finding that the quoted language in FLSA was far from an express exception to the general authorization of removal under § 1441(a). The *Brill* court stated that the Supreme Court's decision in *Breuer* meant that "statutory permission to litigate a federal claim in state court does not foreclose removal under the federal-question

4

jurisdiction." *Brill*, 427 F.3d at 450. While this statement generally applies to *Breuer*, the Supreme Court's holding in *Breuer* was more nuanced, and this Court finds that it does not control the question here.

## 2. Alito's Dissent in *ErieNet*

The Sixth Circuit also suggested that then-Judge Alito's dissent in *ErieNet* casts doubt on the majority view that TCPA claims do not enjoy federal question jurisdiction. *Charvat*, 561 F.3d at 627 n.2 (citing *ErieNet*, 156 F.3d at 521–23 (Alito, J., dissenting)). In his dissent, Alito asserted that the question is controlled by the Supreme Court's decision in *Tafflin v. Levitt*, 493 U.S. 455 (1990). *ErieNet*, 156 F.3d at 521. In *Tafflin*, the Supreme Court interpreted a provision of the federal RICO statute which provided that a person "may sue [for injury] in any appropriate United States district court." *Tafflin*, 493 U.S. at 460. "The Court found that this language was insufficient to divest state courts of concurrent jurisdiction." *ErieNet*, 156 F.3d at 521. The *Tafflin* Court noted that "[t]his grant of federal jurisdiction is plainly permissive, not mandatory, for the statute does not state nor even suggest that such jurisdiction shall be exclusive. It provides that suits of the kind described 'may' be brought in the federal district courts, not that they must be." *Tafflin*, 493 U.S. at 460–61 (citations and quotations omitted).

Alito asserts that the same reasoning applies to the statutory language at issue here, which provides that "[a] person . . . may, if otherwise permitted by the laws or rules of court of a State, bring [an action] in an appropriate court of that State." *ErieNet*, 156 F.3d at 521; 47 U.S.C. § 227(b)(3), (c)(5). While this reasoning appears sound at first glance, the majority in *ErieNet* declined to apply it because *Tafflin* concerned divestment of state court jurisdiction whereas *ErieNet* concerned divestment of federal court jurisdiction. *Id.*, 156 F.3d at 516–17, 521. In *Tafflin*, the Supreme Court explained that state courts are "presumptively competent" to adjudicate claims arising under federal law, and that the "deeply rooted presumption in favor of

5

concurrent state court jurisdiction" can be rebutted only "by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Tafflin*, 493 U.S. at 458–59.

As the *ErieNet* majority points out, however, "there is no presumption of jurisdiction in the federal courts." *ErieNet*, 156 F.3d at 516 (citing *Sheldon v. Sill*, 49 U.S. 441, 442 (1850)); *see also Farkas v. Bridgestone/Firestone, Inc.*, 113 F. Supp. 2d 1107, 1110 (W.D. Ky. 2000) ("[u]nlike state courts of general jurisdiction, federal courts have limited jurisdiction and may not hear a case absent constitutional and statutory authority") (citations omitted); *Fisch v. General Motors Corp.*, 169 F.2d 266, 273 (6th Cir. 1948) (federal district courts "derive[] [their] jurisdiction wholly from the authority of Congress . . . [which] may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution") (citations omitted).

In the absence of the "deeply rooted presumption" of jurisdiction that guided the *Tafflin* Court, 493 U.S. at 459, this Court is unable to conclude that the same reasoning should apply here.

This Court therefore agrees with the unanimous panel of the Sixth Circuit in *Dun-Rite*, 2004 U.S. App. Lexis 28047, as well as the Courts of Appeals for the Second, Third, Fourth, Fifth, Ninth, and Eleventh Circuits, *see supra*, in concluding that the plain language of the TCPA creates a private right of action in state—not federal—court. 47 U.S.C. § 227(b)(3), (c)(5) ("[a] person . . . may, if otherwise permitted by the laws or rules of court of a State, bring [an action] in an appropriate court of that State").

## B. Diversity Jurisdiction[1]

Dismissal based on lack of diversity jurisdiction is proper if it appears "to a legal certainty that the claim is really for less than the [required] jurisdictional amount." *Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 628 (6th Cir. 2009) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). Ordinarily, attorney's fees are excluded from the calculation "unless the fees are provided for by contract or where a statute mandates or expressly allows the payment of such fees." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007) (citing *Clark v. Nat. Travelers Life Ins. Co.*, 518 F.2d 1167, 1168 (6th Cir. 1975)). Diversity jurisdiction exists if Plaintiff can reach the requisite amount in controversy by totaling (1) damages under the TCPA,[2] (2) damages under the CSPA, (3) damages for invasion of privacy, and (4) statutory attorney's fees.

### 1. TCPA

Plaintiff's alleged damages under the TCPA total $184,500 pursuant to 47 U.S.C. § 227(b)(3). (2d Am. Compl. ¶¶ 47–55, 65–70, 77–79.) Plaintiff reached this figure by dissecting each phone call into multiple violations and attaching statutory damages to each one. Plaintiff also requests treble damages for all TCPA violations. For example, a prerecorded voice mail on September 30, 2008 is alleged to contain five separate violations: (1) Defendant called without Plaintiff's prior express consent, permission, or invitation; (2) Defendant failed to voluntarily state the caller's name; (3) Defendant failed to maintain a record of Plaintiff's previous demand that the caller place Plaintiff's name on the Do Not Call List; (4) Defendant

---

[1] Although this issue has not been raised, the Court notes that it agrees with the Courts of Appeals for the Second and Tenth Circuits in concluding that a lack of federal question jurisdiction over TCPA claims does not preclude diversity jurisdiction. *See Gottlieb v. Carnival Corp.*, 436 F.3d 335, 336 (2d Cir. 2006); *US Fax Law Ctr., Inc. v. Ihire, Inc.*, 476 F.3d 1112, 1116–18 (10th Cir. 2007). However, because the Court finds that the requirements for diversity jurisdiction are not met in this case, this issue is not dispositive.

[2] The Court assumes, without deciding, that damages under the TCPA may be included in the amount in controversy for the purpose of diversity jurisdiction. As shown by the analysis below, the inclusion of TCPA damages does not affect the outcome of this motion.

7

failed to honor Plaintiff's previous demand that the caller place Plaintiff's name on the Do Not Call List; and (5) Defendant failed to state at the beginning of the call that the purpose of the call was to make a sale. (2d Am. Compl. ¶ 15.) Under Plaintiff's analysis, in which he requests $500 per violation and treble damages, this call alone could result in damages of $7,500 under 47 U.S.C. § 227(b)(3)(B). Assuming that each of the alleged 31 calls involved numerous violations, Plaintiff would easily satisfy the required amount in controversy under § 1332. However, if Plaintiff were limited to the allegation of one violation per call, the above example would constitute one violation rather than five.

Defendant is alleged to have placed 31 automated calls to Plaintiff's residence in the span of three months. The Sixth Circuit has held that under TCPA § 227(c), *live* telemarketing calls are subject to a "per-call" analysis. *Charvat*, 561 F.3d 623. Plaintiff asserts that the instant case should be distinguished from the Sixth Circuit's finding because his claims are brought under § 227(b), which regulates *automated* telephone calls.

The pertinent parts of TCPA subsections 227(b) and (c) contain identical language. Both sections allow a plaintiff to bring "an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages *for each such violation*, whichever is greater." 47 U.S.C. § § 227(b)(3)(B), (c)(5)(B) (emphasis added). Treble damages may be awarded under both subsections for willful and knowing violations. *Id.*

The Sixth Circuit has held that the phrase "each such violation" in § 227(c)(5) refers back to the word "call" in the beginning of the sentence, concluding that the language "unambiguously allows for damages only on a per-call basis." *Charvat*, 561 F.3d at 631. Plaintiff draws a distinction between § 227(b)(3)(B), which he claims refers to automated calls, and § 227(c)(5), which is calculated on a per-call basis, based on the fact that § 227(b)(3)(B) lacks the word, "call."

8

Plaintiff points to an Ohio appellate court decision, in which the court found that automated phone calls provide for recovery per-violation under TCPA § 227(b)(3). *Charvat v. Ryan*, 2006 Ohio 3705, ¶ 26 (Ohio Ct. App. July 20, 2006) (holding that a "per violation" basis is appropriate when "the caller not only violates the subsection by placing the call, but also impedes further enforcement of the called party's rights under the TCPA by failing to include within the message the contact"). This Court, however, has previously concluded that a party who makes automated phone calls is subject to damages on a per-call basis under § 227(b)(3). *Hamilton v. Voxeo Corp.*, Nos. 3:07-cv-404, 3:08-cv-279, 2009 U.S. Dist. Lexis 53619, *10 (S.D. Oh. June 25, 2009). In *Hamilton*, this Court acknowledged that the Sixth Circuit did not interpret TCPA § 227(b)(3) to provide relief per-call or per-violation. However, following the logic ascribed to § 227(c), it concluded "that an action under 47 U.S.C. § 227(b)(3)(B) can recover only on a per call and not a per violation basis. That is, there can only be one recovery of damages under § 227(b)(3)(B) per call, regardless of how many violations of the TCPA or its implementing regulations occurred in that call." *Id.*, 2009 U.S. Dist. Lexis 53619.

The lack of the word "call" in § 227(b) does not indicate that the section should be interpreted differently than § 227(c). There are simple reasons why the word "call" would exist in one place and not the other. Section 227(b), for example, is not limited to phone calls; it also restricts fax transmissions. The legislative history of the TCPA illustrates that Congress did not intend to provide a windfall to a person who receives an automated call instead of a live call. In a footnote, the *Charvat* court noted a statement from Senator Ernest Hollings, a sponsor of what would become part of the TCPA. "Senator Hollings noted that '[t]he provision would allow consumers to bring an action in State court' and 'hope[d] that States will make it as easy as possible to bring such actions, preferably in small claims court.'" *Charvat*, 561 F.3d at 632, n.8 (citing 137 Cong. Rec. S16204, S16205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings)).

9

There is no compelling reason that this Court should treat damages under § 227(b) differently than § 227(c). Consistent with the decisions in *Hamilton* and *Charvat*, damages must be awarded per call. Under that framework, Plaintiff's maximum damages are calculated by multiplying 31 calls by $1,500[3] in damages per call, totaling $46,500.

### 2. CSPA

Plaintiff also requests damages under the CSPA, which allows $200 for each violation of Ohio Revised Code § 1345.02. Ohio Rev. Code § 1345.09(B). Plaintiff seeks a total of $30,600 for 153 such violations. (2d Am. Compl. ¶ C.) Most Ohio courts allow recovery for multiple violations per call under the CSPA if "there are separate rule violations caused by separate acts." *Ferron v. DIRECTV, Inc.*, 2008 U.S. Dist. Lexis 107764 (S.D. Oh. Feb. 6, 2008) (citing *Charvat v. GVN Mich., Inc.*, 531 F. Supp. 2d 922, 928) (S.D. Oh. Jan. 25, 2008)). However, "if the individual violations . . . are all part of one transaction or act resulting in the same injury, then the court will limit plaintiff's recovery to $200 per act." *Charvat*, 531 F. Supp. 2d at 928.

In the present case, Plaintiff alleges multiple violations in each phone call. However, when multiple CSPA violations arise from the same act, the plaintiff is limited to one recovery. *Charvat*, 531 F. Supp. 2d at 929. In *Charvat*, the Sixth Circuit found that where several violations of the CSPA were alleged for each telemarketing call, "each group of violations was based on the same transaction—a telephone call," and statutory damages were limited to "one recovery for each [call]." *Id.*, 531 F. Supp. 2d at 929.

Calculated on a per-call basis, Plaintiff's damages for the alleged 31 calls would amount to a maximum of $6,200.

---

[3] The Court calculates treble damages of $1,500 per call by multiplying statutory damages of $500 per call by three.

10

### 3. Invasion of Privacy

In addition to the statutory violations discussed above, Plaintiff alleges invasion of privacy under Ohio law. Defendants seek dismissal of this claim under Rule 12(b)(6), asserting that 31 telemarketing phone calls over the course of almost three months do not amount to invasion of privacy under Ohio law. Because the Court finds that it lacks jurisdiction over this case, it does not address Defendants' motion to dismiss under Rule 12(b)(6). *See Moir*, 895 F.2d at 269. However, in order to determine whether Plaintiff has satisfied the amount in controversy requirement for diversity jurisdiction, the Court must ascertain what damages Plaintiff can count in good faith for this claim. For that purpose, the Court must determine whether Plaintiff states a claim under Ohio law.

The Supreme Court of Ohio defines the tortious invasion of privacy as follows:

> An actionable invasion of the right of privacy is [1] the unwarranted appropriation or exploitation of one's personality, [2] the publicizing of one's private affairs with which the public has no legitimate concern, or [3] the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.

*Housh v. Peth*, 165 Ohio St. 35, syllabus ¶ 2 (Oh. 1956). In *Housh*, the defendant's efforts to collect a debt included calling the plaintiff every day for a period of weeks and, at one point, calling her at work three times in 15 minutes. *Id.*, 165 Ohio St. at 41. The court found the defendant's actions "were all part of the pattern to harass and humiliate the plaintiff and cause her mental pain and anguish and cause her emotional disturbance for the purpose of coercing her to pay the debt." *Id.*, 165 Ohio St. at 41. The court has also stated that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for the invasion of his privacy, if the intrusion

11

would be highly offensive to a reasonable person." *Sustin v. Fee*, 69 Ohio St. 2d 143, 145 (Oh. 1982).

In another Ohio case, an appellate court affirmed a jury's determination that the telemarketing calls constituted an invasion of privacy where the plaintiff presented evidence of hundreds of phone calls. *Irvine v. Akron Beacon Journal*, 147 Ohio App. 3d 428, 440 (Ohio Ct. App. May 8, 2002). In *Irvine*, the calls made to the plaintiffs were "hang-up calls" from an unidentifiable private line, and many of the calls were made in early morning hours. *Id.*, 147 Ohio App. 3d at 432. The appellate court did not find error with the trial court's instructions to the jury that "it is only when telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the Plaintiffs that becomes a substantial burden to his existence that the Plaintiffs' privacy is invaded." *Id.*, 147 Ohio App. 3d at 440.

Plaintiff alleges that Defendants intentionally intruded upon his right to be left alone by making 31 automated phone calls over a three-month period, 30 of which occurred after Plaintiff requested to be taken off the Defendants' phone list. All of the calls were made in the late morning or early afternoon hours. By making these calls, Plaintiffs alleges that Defendants "interfered with Plaintiff's right to be left alone, intruded upon Plaintiff's solitude and seclusion, and invaded Plaintiff's privacy in a manner that would be highly offensive to a reasonable person, and which was highly offensive to Plaintiff, and which amounted to a campaign to intentionally and maliciously harass." (2d Am. Compl. ¶ 87.) He claims that the calls were a nuisance which caused "agitation, irritation, frustration" and numerous other emotions, "just as any reasonable person would have experienced under the same circumstances." (*Id.* ¶ 88.) Defendants assert that the alleged calls in this case "fail to rise to the level of a claim for invasion of privacy" under Ohio law.

12

The Court finds that this case is distinguishable from *Housh* and *Irvine*, the only published Ohio cases addressing the issue.[4] In *Housh*, the Ohio Supreme Court found that the caller purposely harassed and humiliated the plaintiff to coerce her to pay a debt; *Irvine* involved unidentifiable hang-up calls in the early morning hours. This case involves no facts comparable to the aggravating circumstances found in *Housh* and *Irvine*. Plaintiff alleges 31 telemarketing calls taking place mid-day over a period of three months. While these calls may have been annoying, the Court finds that they do not constitute a plausible claim for an intrusion that would "outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities" or that would be "highly offensive to a reasonable person." *Housh*, 165 Ohio St. 35, syllabus ¶ 2; *Sustin*, 69 Ohio St. 2d 143. The Court therefore must find that Plaintiff's state law claim fails as a matter of law. The Court further finds that Plaintiff's allegations do not allow him, in good faith, to claim damages for an invasion of privacy claim. *See Klepper v. First American Bank*, 916 F.2d 337, 340–41 (6th Cir. 1990).

### 4. Attorney's Fees

Under the CSPA, the "court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed, if . . . (1) [t]he consumer complaining of the act or practice that violated this chapter has brought or maintained an action that is groundless, and the consumer filed or maintained the action in bad faith; [or] (2) [t]he supplier has knowingly committed an act or practice that violates this chapter." Ohio Rev. Code § 1345.09(F). The Sixth Circuit has noted that attorney's fees predicated on the CSPA may be included in the amount in controversy. *Charvat*, 561 F.3d at 630 (citing *Williamson v. Aetna Life Ins. Co.*, 481

---

[4] In *Schuetz v. State Farm Fire & Cas. Co.*, a plaintiff sought defense and indemnification from his insurance company upon being sued by our plaintiff, Charvat, for TCPA and CSPA violations stemming from *two* phone calls. 2007 Ohio 7267 (Ohio Ct. Com. Pl. March 29, 2007). While the Ohio court found that "Charvat's allegations . . . constitute allegations of a violation of his right to 'freedom from unauthorized intrusion,'" *id.*, 2007 Ohio 7267 at P66, the court did not address the merit of Charvat's claims, merely finding that he *alleged* an invasion of privacy claim for the purpose of insurance defense and indemnification.

F.3d 369 (6th Cir. 2007)). In his complaint, Plaintiff requests "reasonable attorney's fees and costs in the amount of at least $50,000, pursuant to O.R.C. § 1345.09(F), for Defendants' knowing violations of O.R.C. § 1345.02(A)." (2d Am. Compl. ¶ D.)

Defendants contend that attorney's fees should not be included in the calculation for the amount in controversy because "the Court would need to make an additional determination, after judgment, which requires the Court to speculate about whether the amount in controversy will exceed $75,000." (Defs.' Reply 5.) Defendants cite *Torres v. State Farm Mut. Auto. Ins. Co.*, 478 F. Supp. 2d 924 (E.D. Mich. 2007), in which a court declined to include statutory attorney's fees in the amount in controversy. In that case, the plaintiff sought damages under Michigan's No-Fault Act for unpaid wages and expenses related to a car accident. The court denied her request for attorney's fees to be included in the amount of controversy for diversity jurisdiction because, in order to award fees, the court would have to "make an additional determination, after a judgment has been rendered, that Defendant *unreasonably* failed to make payments." *Id.*, 478 F. Supp. 2d at 927 (emphasis added).

Under the CSPA, no additional determination is required to award fees. The Supreme Court of Ohio has ruled that, "to establish a knowing violation of R.C. 1345.09, for an award of attorney fees, a plaintiff need prove only that the defendant acted in a manner that violated the CSPA and need not prove that the defendant knew that the conduct violated the law." *Charvat v. Ryan*, 2007 Ohio 6833 (Oh. 2007). This case is distinguishable from *Torres*, and Plaintiff's claim for reasonable attorney's fees must be included in the amount in controversy.

The Court considers the amount claimed in the pleading "unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." *Klepper v. First American Bank*, 916 F.2d 337, 340–41 (6th Cir. 1990) (finding that, at the jurisdictional stage, the court could not find to a legal certainty that the plaintiff could not recover statutory punitive

14

damages). As to including statutory attorney's fees in the amount of controversy, however, this Court is unaware of any case law controlling the amount to be included. Some courts require that fees be calculated at the time the complaint is filed; others require the district court to estimate the attorney's fees likely to be incurred in prosecuting the case; still others require the plaintiff to prove to a legal certainty that the fees will be sufficient. MOORE'S FED. PRACTICE 3d § 102.106[6][a] (citing *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958–59 (7th Cir. 1998) (attorney's fees "that have not been, and may never be incurred" cannot be "in controversy"); *GreatAmerica Leasing Corp. v. Rohr-Tippe Motors*, 387 F. Supp. 2d 992, 995–97 (N.D. Iowa 2005) (court cannot speculate about fees that might accrue if matter were to proceed); *Raymond v. Lane Constr. Corp.*, 527 F. Supp. 2d 156 (D. Me. 2007) (noting that some courts require the defendant to show to a legal certainty that the jurisdictional threshold has been met; others apply the preponderance of the evidence standard); *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998) (including a "reasonable estimate" of attorney's fees)); *see also Francis v. Madison Nat'l Life Ins. Co.*, 2009 US Dist. Lexis 66121, *16 (noting, "it is doubtful that a reasonable attorney fee would make up the . . . shortfall between the [alleged damages] and the requisite $75,000 amount in controversy"); *Hall v. Travelers Ins. Cos.*, 691 F. Supp. 1406, 1410 (N.D. Ga. 1988) (finding that a "conservative estimate" of fees would likely be sufficient; noting that fees "run in the range of 25 to 40 percent of judgment amounts").

Under the standard most generous to Plaintiff, the Court must estimate the reasonable attorney's fees *likely to be incurred* in prosecuting the case. Even applying this standard, the Court finds that Plaintiff is not likely to incur reasonable fees of $22,300[5], which would be required to satisfy the amount in controversy requirement for diversity jurisdiction.

---

[5] The Court reaches this number by calculating the difference between $75,000 and Plaintiff's maximum total damages under the TCPA ($46,500) and CSPA ($6,200).

15

It therefore appears to a legal certainty that Plaintiff's claims are really for less than $75,000, and this Court has no jurisdiction over this case.

### III.

For the reasons set forth above, Defendant's Motion to Dismiss (Document 22) is hereby **GRANTED**, and this case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

3-31-2010
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**