*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0248p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

PHILIP J. CHARVAT,

*Plaintiff-Appellant,*

*v.*

No. 10-3390

NMP, LLC, a Delaware Limited Liability
Company; MEDIA SYNERGY GROUP, LLC, a
Virginia Limited Liability Company,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 09-00209—Edmund A. Sargus, Jr., District Judge.

Decided and Filed: August 30, 2011

Before: BATCHELDER, Chief Judge; GUY and MOORE, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** John W. Ferron, Lisa A. Wafer, FERRON & ASSOCIATES, Columbus, Ohio, for Appellant. James B. Hadden, Eric B. Gallon, Anthony R. McClure, PORTER, WRIGHT, MORRIS & ARTHUR LLP, Columbus, Ohio, for Appellees.

MOORE, J., delivered the opinion of the court, in which GUY, J., joined. BATCHELDER, C. J. (pp. 23–24), delivered a separate opinion concurring in the judgment.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant Philip Charvat alleges that Defendants-Appellees NMP, LLC and Media Synergy Group, LLC (together, "Defendants") placed thirty-three unsolicited telemarketing calls to his home over a three-month period in 2008. He alleges that these calls violated the Telephone

No. 10-3390          *Charvat v. NMP, LLC, et al.*                    Page 2

Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann. § 1345.02.  He also alleges a state-law claim of invasion of privacy.  Charvat now appeals the district court's decision to dismiss the case for lack of subject-matter jurisdiction.  Because the district court erred in concluding that (1) federal courts lack federal-question jurisdiction over private TCPA claims, and (2) Charvat's alleged damages do not exceed $75,000 as required for diversity jurisdiction over Charvat's state-law claims, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

## I.  BACKGROUND & PROCEDURAL HISTORY

Charvat alleges that, from September 12, 2008 to December 10, 2008, Defendants placed thirty-three telemarketing calls to his home for the purpose of selling him a membership in the NASCAR Membership Club.  The first call was a prerecorded voice message, and the next two calls were placed by a live agent.  The remaining thirty calls were prerecorded messages.  Charvat alleges that during the third call, he asked Defendants' live agent to place his name and residential telephone number on Defendants' do-not-call list.

On March 18, 2009, Charvat filed suit against NMP, LLC in the United States District Court for the Southern District of Ohio, alleging violations of the TCPA, 47 U.S.C. § 227, and the OCSPA, Ohio Rev. Code Ann. § 1345.02.  He amended his complaint on April 3, 2009, to add Media Synergy Group, LLC as a defendant. Defendants filed a motion to dismiss Charvat's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of federal subject-matter jurisdiction. With permission of the district court, Charvat then filed a Second Amended Complaint to add a state-law claim of invasion of privacy.  Defendants filed a motion to dismiss Charvat's Second Amended Complaint, again arguing lack of federal subject-matter jurisdiction under Rule 12(b)(1) but also asserting that the state-law claim for invasion of privacy fails to state a claim under Rule 12(b)(6).

No. 10-3390          *Charvat v. NMP, LLC, et al.*                    Page 3

The district court granted Defendants' motion to dismiss, concluding that the court lacked federal subject-matter jurisdiction. Charvat timely appealed and now challenges the district court's conclusions that (1) it lacked federal-question jurisdiction over his claims arising under the TCPA, (2) it lacked diversity jurisdiction because his claims do not meet the $75,000 amount-in-controversy requirement, and (3) his state-law claim for invasion of privacy fails as a matter of law.

## II.  ANALYSIS

### A.  Statutory Overview

#### 1.  The Telephone Consumer Protection Act

In 1991, Congress enacted the TCPA "to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile . . . machines and automatic dialers." S. Rep. No. 102-178, at 1, *reprinted in* 1991 U.S.C.C.A.N. 1968, 1968; *see* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (current version at 47 U.S.C. § 227).

The TCPA contains a number of restrictions on the use of automated telephone equipment, including prohibiting the "initiat[ion of] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(B). Subsection (b) provides that the Federal Communications Commission ("FCC") "shall prescribe regulations to implement the requirements of [that] subsection." § 227(b)(2). Accordingly, the FCC promulgated regulations governing automated telephone calls, messages using an artificial or prerecorded voice, and advertisements sent to telephone facsimile machines. *See* 47 C.F.R. § 64.1200(a).[1] Subsection (b) also includes an express private right of action and statutory damages provision, which states:

---

[1]The applicable regulation, 47 C.F.R. § 64.1200, was amended in November 2008, but the changes do not impact the subsections relevant to this case. *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 71 Fed. Reg. 75122 (Dec. 14, 2006).

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–
(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
(C) both such actions.
If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

Subsection (d) of the TCPA contains "[t]echnical and procedural standards" for such automated telephone equipment and instructs the FCC to "prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone" and to include certain listed minimum requirements. 47 U.S.C. § 227(d)(3); *see* 47 C.F.R. § 64.1200(b).

In addition to the restrictions on automated telephone equipment, the TCPA instructs the FCC to issue regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Accordingly, the FCC issued regulations prohibiting "person[s] or entit[ies] [from] initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless [the] person or entity has instituted [certain listed] procedures for maintaining" a do-not-call list. 47 C.F.R. § 64.1200(d). Relevant here, the regulations require the telemarketer to (1) provide "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted," § 64.1200(d)(4); (2) maintain a do-not-call list, § 64.1200(d)(6); and (3) honor a person's request not to be called, § 64.1200(d)(3). Subsection (c) of the TCPA also contains a private right of action, which states:

A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State–

(A)  an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B)  an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

(C)  both such actions.

It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection.  If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(c)(5).

The TCPA additionally provides an enforcement mechanism for state attorneys general to bring actions against persons engaging in a pattern or practice of calls or transmissions in violation of the Act or its regulations:

Whenever the attorney general of a State, or an official or agency designated by a State, has reason to believe that any person has engaged or is engaging in a pattern or practice of telephone calls or other transmissions to residents of that State in violation of this section or the regulations prescribed under this section, the State may bring a civil action on behalf of its residents to enjoin such calls, an action to recover for actual monetary loss or receive $500 in damages for each violation, or both such actions.  If the court finds the defendant willfully or knowingly violated such regulations, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the preceding sentence.

No. 10-3390          *Charvat v. NMP, LLC, et al.*                         Page 6

47 U.S.C. § 227(f)(1) (2008).[2]  The federal district courts have exclusive jurisdiction over such actions.  § 227(f)(2) (2008).

### 2.  The Ohio Consumer Sales Practices Act

The OCSPA provides in relevant part that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction."  Ohio Rev. Code Ann. § 1345.02(A).  The statute lists acts or practices deemed deceptive, § 1345.02(B), but the Ohio Attorney General also may issue regulations defining acts or practices that violate the OCSPA, § 1345.05(B)(2).  Additionally, the Ohio Attorney General must make available for public inspection decisions of Ohio courts deeming practices or acts to violate the OCSPA.  § 1345.05(A)(3).  A consumer may recover three times his actual damages or $200, whichever is greater, for any act that previously was declared unfair, deceptive, or unconscionable in a regulation or decision made available for public inspection.  § 1345.09(B).  Additionally, if "the supplier has knowingly committed an act or practice that violates" Chapter 1345, the court may award "a reasonable attorney's fee limited to the work reasonably performed."  § 1345.09(F).

### B.  Federal-Question Jurisdiction Under the Telephone Consumer Protection Act

Charvat first argues that the district court erred in concluding that it lacked federal-question jurisdiction, 28 U.S.C. § 1331, over his claims arising under the TCPA.  We review de novo the district court's dismissal of a complaint pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction.  *Lewis v. Whirlpool Corp.*, 630 F.3d 484, 487 (6th Cir. 2011).

Relying on our unpublished decision in *Dun-Rite Construction, Inc. v. Amazing Tickets, Inc.*, No. 04-3216, 2004 WL 3239533 (6th Cir. 2004) (unpublished order), and

---

[2]The TCPA was amended in 2010 by the Truth in Caller ID Act of 2009, Pub. L. No. 111-331, 124 Stat. 3572.  The substance of the amendment is not relevant for purposes of this decision, but the amendment redesignated subsections (e), (f), and (g) as subsections (f), (g), and (h), respectively.  *Id.*  We apply the version of the statute in effect in 2008, when Defendants placed the calls to Charvat.

the decisions of six of our sister circuits,[3] the district court concluded that "the plain language of the TCPA creates a private right of action in state—not federal—court." R.53 (Dist. Ct. Op. at 6).  Charvat urges us not to apply the unpublished—and therefore not binding—decision in *Dun-Rite* and rather to follow the Seventh Circuit's decision in *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005), and then-Judge Alito's dissent in *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 521 (3d Cir. 1998). These opinions analyze the Supreme Court's decisions in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), *Tafflin v. Levitt*, 493 U.S. 455 (1990), and *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), and conclude that there is federal-question jurisdiction under the TCPA.[4]  *See Brill*, 427 F.3d at 450–52; *ErieNet*, 156 F.3d at 521–23 (Alito, J., dissenting).  *But see Mims v. Arrow Fin. Servs., LLC*, No. 10-12077, 2010 WL 4840430, at *1 (11th Cir. Nov. 30, 2010) (unpublished decision) (concluding that *Grable* and *Breuer* do not overturn its precedent in *Nicholson v. Hooters of Augusta, Inc.*, 136 F.3d 1287, 1289 (11th Cir. 1998)), *petition for cert. granted*, 2011 WL 1212225 (June 27, 2011) (No. 10-1195).

The jurisdiction of federal courts over private TCPA claims has been the subject of much debate.  *See, e.g.*, *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72 (3d Cir. 2011) (resulting in three separate opinions on the issue of jurisdiction[5]), *reh'g en banc granted*, 2011 WL 1879624 (3d Cir. May 17, 2011).  After briefing in this

---

[3]*Murphey v. Lanier*, 204 F.3d 911, 915 (9th Cir. 2000); *Foxhall Realty Law Offices, Inc. v. Telecomms. Premium Servs., Ltd.*, 156 F.3d 432, 435 (2d Cir. 1998); *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 519 (3d Cir. 1998); *Nicholson v. Hooters of Augusta, Inc.*, 136 F.3d 1287, 1289 (11th Cir. 1998), *as modified on reh'rg*, 140 F.3d 898 (11th Cir. 1998); *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 514 (5th Cir. 1997); *Int'l Sci. & Tech. Inst., Inc. v. Inacom Commc'ns, Inc.*, 106 F.3d 1146, 1156 (4th Cir. 1997).

[4]There has been some argument that the Seventh Circuit's discussion of federal-question jurisdiction in *Brill* is dicta.  *See, e.g.*, Brief in Opposition at 5, *Mims v. Arrow Fin. Servs., LLC*, No. 10-1195 (U.S. May 27, 2011).  But, in *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560 (7th Cir. 2011), the Seventh Circuit reaffirmed its conclusion in *Brill* that there is federal-question jurisdiction under the TCPA.  *Id.* at 561.

[5]Judge Rendell wrote for the majority, concluding that federal courts have diversity jurisdiction over private TCPA claims but reaffirming the Third Circuit's decision in *ErieNet* that federal courts do not have federal-question jurisdiction over private TCPA claims.  *Landsman*, 640 F.3d at 75, 78 n.6.  Judge McKee concurred in Judge Rendell's diversity-jurisdiction analysis but argued that *ErieNet* is incorrect and that federal courts also have federal-question jurisdiction.  *Id.* at 95 (McKee, J., concurring).  Judge Garth dissented, concluding that federal courts have neither diversity nor federal-question jurisdiction over private TCPA claims.  *Id.* at 101 (Garth, J., dissenting).

case concluded, however, another panel of this court agreed with Charvat and held that federal-question jurisdiction exists under the TCPA. *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 465 (6th Cir. 2010); *see also APB Assocs., Inc. v. Bronco's Saloon, Inc.*, No. 10-1325, 2011 WL 2192635, at *1 (6th Cir. June 7, 2011) (unpublished decision), *reh'g and reh'g en banc denied*. We are bound by *Echostar* "unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985). Therefore, we conclude that the district court erred in concluding that federal courts lack federal-question jurisdiction over private TCPA claims.

## C. Diversity Jurisdiction

Charvat also appeals the district court's determination that it lacked diversity jurisdiction over his claims. Charvat alleges multiple state-law claims under the OCSPA and a state-law claim of invasion of privacy. Although the district court may exercise supplemental jurisdiction over these state-law claims pursuant to 28 U.S.C. § 1367, supplemental jurisdiction is discretionary, not mandatory. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010). If there is diversity jurisdiction, the district court may not decline to decide the state-law claims.

We therefore consider whether the district court erred in concluding that the amount in controversy does not "exceed[] the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332.[6] We review this conclusion de novo. *Lewis*, 630 F.3d at 487. Charvat alleges that Defendants are jointly and severally liable for each of the multiple claims brought pursuant to the TCPA and Ohio law. R.20 (2d Am. Compl. at 39). We thus can aggregate Charvat's claims to determine whether the total alleged exceeds $75,000. *LM Ins. Corp. v. Spaulding Enters. Inc.*, 533 F.3d 542, 548 (7th Cir. 2008) (discussing aggregation of claims against multiple defendants); *Golden ex rel. Golden v. Golden*, 382 F.3d 348, 355 n.5 (3d Cir. 2004) (same), *abrogated on other*

---

[6]Defendants have not challenged Charvat's assertion that there is complete diversity between the parties, 28 U.S.C. § 1332. *See* R.20 (2d Am. Compl. ¶¶ 1–4, 7).

No. 10-3390        *Charvat v. NMP, LLC, et al.*                        Page 9

*grounds by Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006); 14AA Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3704 (4th ed. 2011) (indicating that claims based on diversity jurisdiction can be aggregated with claims based on federal-question jurisdiction).

Diversity jurisdiction is defeated when it "'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 628 (6th Cir. 2009) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). We "consider the amount alleged in a complaint and [do] not dismiss a complaint for lack of subject matter jurisdiction unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." *Mass. Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416 (6th Cir. 1996) (internal quotation marks omitted).

It is a legal certainty that the plaintiff cannot recover the damages that he or she seeks when the applicable law limits or bars the damages. *GVN Mich.*, 561 F.3d at 628. In this respect, we review the district court's conclusions regarding the statutory damages permitted under the TCPA and the OCSPA, as well as the attorney fees recoverable under the OCSPA. Additionally, in some circumstances, a pleaded claim may not be used to satisfy the amount-in-controversy requirement if "it [is] clear from the face of the pleadings" that the claim fails as a matter of law. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 232–33 (6th Cir. 1997) (internal quotation marks omitted). In this respect, we review the district court's conclusion that Charvat failed to state a claim of invasion of privacy under Ohio law as if the district court had decided it under Defendants' motion to dismiss pursuant to Rule 12(b)(6). *See Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615, 619 n.3 (6th Cir. 2010); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 918 (6th Cir. 1986).

No. 10-3390      *Charvat v. NMP, LLC, et al.*                    Page 10

### 1.  Damages Under the TCPA

Charvat alleges five counts of violations under the TCPA from the thirty-three telephone calls.  He alleges that Defendants (1) used a prerecorded voice to deliver a message without his prior express consent, in violation of 47 U.S.C. § 227(b)(3)(A), in thirty-one of the calls (Count One); (2) failed to provide the name of the person or entity on whose behalf the call was being made, in violation of 47 C.F.R. § 64.1200(d)(4), in thirty-one of the calls (Count Two); (3) failed to provide the telephone number or address at which the person or entity on whose behalf the call was being made may be contacted, in violation of 47 C.F.R. § 64.1200(d)(4), in the first call (Count Three); (4) failed to maintain a record of his previous request to be placed on the do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(6), for thirty of the calls (Count Seven); and (5) failed to honor his previous do-not-call request, in violation of 47 C.F.R. § 64.1200(d)(3), for thirty of the calls (Count Eight).  Charvat argues that Defendants committed these violations willfully or knowingly and that therefore he is entitled to treble statutory damages of $1500 for each violation in each call.  Charvat thus alleges damages totaling $184,500 under the TCPA.

Applying our decision in *GVN Michigan*, in which we concluded that § 227(c)(5)'s damages provision "unambiguously allows for statutory damages on only a per-call basis," 561 F.3d at 631, the district court concluded that § 227(b)(3)'s damage provision for automated calls likewise limits damages to one recovery per call.  The district court recognized that, in *GVN Michigan*, we relied on the word "call" in the beginning of the sentence in § 227(c)(5), to conclude that "each such violation" provides for damages on a per-call basis, 561 F.3d at 631–32, and that § 227(b)(3) does not include the word "call."  *Compare* § 227(c)(5) ("A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may . . . bring . . . an action . . . to receive up to $500 in damages for each such violation . . . ."), *with* § 227(b)(3) ("A person or entity may . . . bring . . . an action . . . to receive $500 in damages for each such violation . . . .").  The district court concluded that the textual difference is not a

No. 10-3390        *Charvat v. NMP, LLC, et al.*        Page 11

reason to interpret the sections differently.  It noted that § 227(b)(3) is not limited to telephone calls but also encompasses fax transmissions, and concluded that "Congress did not intend to provide a windfall to a person who receives an automated call instead of a live call."  R.53 (Dist. Ct. Op. at 9) (citing 137 Cong. Rec. S16,204, S16,205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings)).

As an initial matter, under our decision in *GVN Michigan*, Charvat is limited to collecting statutory damages on a per-call basis for his multiple claims—specifically, Counts Two, Three, Seven, and Eight—brought pursuant to the regulations requiring certain minimum procedures for maintaining a do-not-call list.  47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d).  In *GVN Michigan*, we read the introductory language of 47 C.F.R. § 64.1200(d)[7] in conjunction with the listed "minimum standards" for these procedures[8] to conclude that the "regulations focus on the telephone call itself."  561 F.3d at 632.  "The 'violation of the regulations' is therefore the initiation of the phone call without having implemented the minimum procedures."  *Id.*  Charvat is thus limited to $46,500 of damages for violation of these regulations:  $1500 for each of the thirty-one telephone calls that he alleges Defendants initiated without having implemented the minimum procedures for maintaining a do-not-call list.

The more difficult question is whether Charvat may recover statutory damages under both the automated-call subsection of the TCPA, 47 U.S.C. § 227(b), and the do-not-call-list subsection, 47 U.S.C. § 227(c) (as implemented in 47 C.F.R. § 64.1200(d)). We look first to the statutory language.  The fact that the statute includes separate provisions for statutory damages in subsections (b) and (c) suggests that a plaintiff could recover under both.  *See Reichenbach v. Chung Holdings, LLC*, 823 N.E.2d 29, 32–34

---

[7]"No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."  47 C.F.R. § 64.1200(d).

[8]The "minimum standards" include the various violations that Charvat alleges—identification of sellers and telemarketers, maintenance of do-not-call lists, and honoring requests to be included on such lists—as well as provisions regarding maintaining a written do-not-call policy and training of personnel. 47 C.F.R. § 64.1200(d)(1)–(7).

(Ohio Ct. App. 2004).[9]  Subsection (b) permits "an action based on a violation *of this subsection* or the regulations prescribed *under this subsection*," § 227(b)(3)(A) (emphases added),[10] and subsection (c) permits an action based on a "telephone call . . . in violation of the regulations prescribed *under this subsection*," § 227(c)(5) (emphasis added).  Additionally, the two private-right-of-action provisions contain significant textual differences, indicating that they are distinct provisions to be treated independently.  Subsection (c), which requires the maintenance of a do-not-call list, has a threshold requirement that a person "receive[] more than one telephone call within any 12-month period by or on behalf of the same entity."  47 U.S.C. § 227(c)(5).  Subsection (c)'s private-right-of-action provision also includes an affirmative defense if "the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under [subsection (c)]."  *Id.*  These provisions do not appear in the automated-call subsection, § 227(b)(3).

The two subsections, moreover, target different harms:  Subsection (b) imposes greater restrictions on automated telephone calls and transmissions, which Congress found to be "more of a nuisance and a greater invasion of privacy than calls placed by 'live' persons."  S. Rep. No. 102-178, at 4–5, *reprinted in* 1991 U.S.C.C.A.N. 1968, 1972.  Subsection (c) and its accompanying regulations in 47 C.F.R. § 64.1200(d) impose minimum procedures for maintaining a do-not-call list that apply to *all* calls—live or automated—initiated for telemarketing purposes to residential telephone subscribers.  By enacting separate private-right-of-action provisions, each including a statutory damages provision, Congress evidenced its intent that a person be able to recover for the telemarketer's failure to institute the minimum procedures for

---

[9]Of course, we "are not bound by decisions of the state courts of Ohio interpreting the federal TCPA."  *GVN Mich.*, 561 F.3d at 630 n.6.

[10]We recognize that in *GVN Michigan*, we declined to look to the injunctive-relief prong of § 227(c)(5) to interpret the damages provision, instead looking at the introductory language.  561 F.3d at 631–32.  Unlike § 227(c)(5), however, the introductory language of § 227(b)(3) provides no relevant language indicating to what the phrase "each such violation" in the statutory-damages prong refers.  The only language in § 227(b)(3) to which the "each such violation" phrase in the damages prong could refer is prong (A)'s "violation of this subsection or the regulations prescribed under this subsection" language.

maintaining a do-not-call list as well as the additional harm of the call being automated.[11]   Recovery of damages for the two separate provisions does not upset Congress's balance in setting damages "'fair to both the consumer and the telemarketer.'"  *See GVN Mich.*, 561 F.3d at 632 n.8 (quoting 137 Cong. Rec. S16,204, S16,205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings)).

We therefore conclude that a person may recover statutory damages of $1500 for a willful or knowing violation of the automated-call requirements, § 227(b)(3), and $1500 for a willful or knowing violation of the do-not-call-list requirements, § 227(c)(5)—even if both violations occurred in the same telephone call.  Charvat alleges that Defendants willfully or knowingly violated subsection (b)'s automated-call requirements and subsection (c)'s do-not-call-list requirements in thirty-one of the telephone calls.  Thus, Charvat's maximum damages for the thirty-one telephone calls that he alleges violated both sets of requirements total $93,000.

Finally, we note that Charvat alleges that he is entitled to statutory damages for the violations of the do-not-call-list regulations, 47 C.F.R. § 64.1200(d), pursuant to subsection (b)'s damages provision, 47 U.S.C. § 227(b)(3). R.20 (2d Am. Compl. ¶¶ 52, 55, 67, 70).  An action based on a telephone call that violates the do-not-call-list regulations, however, is provided for in subsection (c) of § 227.  Technical and procedural standards specific to automated calls are included in § 227(d) and accompanying regulation 47 C.F.R. § 64.1200(b), which do not provide a private right of action or a statutory-damages provision.  Charvat should have alleged damages for the do-not-call violations pursuant to § 227(c)(5) instead of (b)(3); on remand, the district court shall permit Charvat to amend his complaint for this technical, non-prejudicial pleading error.  *See* Fed. R. Civ. P. 15(a)(2).

---

[11] The FCC has "decline[d] to make any determination about the specific contours of the TCPA's private right of action," because it "believes it is for Congress, not the Commission, to either clarify or limit this right of action."  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14136 (2003).

No. 10-3390          *Charvat v. NMP, LLC, et al.*          Page 14

## 2. Damages Under the OCSPA

Charvat also alleges six counts of violations of the OCSPA from the thirty-three telephone calls. In five counts parallel to the five TCPA counts outlined above, he alleges that each violation of the TCPA is also a violation of Ohio Revised Code § 1345.02(A) (Counts Four, Five, Six, Nine, and Ten, respectively). He also alleges that, in thirty of the calls, Defendants failed to state at the beginning of the call that the purpose was to make a sale, in violation of the disclosure provisions in Ohio Administrative Code ("O.A.C.") § 109:4-3-11(A)(1)[12] and/or 16 C.F.R. § 310.4(d)(2),[13] and therefore in violation of Ohio Revised Code § 1345.02(A) (Count Eleven). He claims that he is entitled to statutory damages of $200 for each violation in each call, totaling $30,600. *See* Ohio Rev. Code Ann. § 1345.09(B).

Charvat's OCSPA claims rely on his assertion that violations of the TCPA, O.A.C. § 109:4-3-11(A)(1), and 16 C.F.R. § 310.4(d)(2), are also violations of Ohio Revised Code § 1345.02(A). R.20 (2d Am. Compl. ¶¶ 57 n.2, 78 n.3). For the first time on appeal, Defendants now argue that, pursuant to the Ohio Supreme Court's decision in *Culbreath v. Golding Enterprises, L.L.C.*, 872 N.E.2d 284 (Ohio 2007), "simply sending an unsolicited communication that violates the TCPA does not, as a matter of law, constitute a violation of the CSPA." Appellee Br. at 10. Rather, Defendants argue, the unsolicited telephone call must be deceptive, unfair, or unconscionable. Defendants argue that Charvat has not alleged that the telephone calls were deceptive, unfair, or unconscionable.

---

[12]O.A.C. § 109:4-3-11(A)(1) states,
>    It shall be a deceptive act or practice in connection with a consumer transaction involving any direct solicitation sale for a supplier to . . . [s]olicit a sale without clearly, affirmatively, and expressly revealing at the time the supplier initially contacts the consumer or prospective consumer, and before making any other statement, asking any question, or entering the residence of the consumer or prospective consumer, that the purpose of the contact is to effect a sale, stating in general terms the goods or services the supplier has to offer . . . .

[13]16 C.F.R. § 310.4(d)(2) states,
>    It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer in an outbound telephone call or internal or external upsell to induce the purchase of goods or services to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, . . . [t]hat the purpose of the call is to sell goods or services.

No. 10-3390        *Charvat v. NMP, LLC, et al.*                          Page 15

    We agree that, under *Culbreath*, delivering a prerecorded message without prior express consent, in violation of 47 U.S.C. § 227(b)(3)(A), is not, by itself, a violation of the OCSPA. *See* 872 N.E.2d at 291. We are, of course, bound by the Ohio Supreme Court's interpretation of Ohio law. The earlier Ohio Court of Common Pleas cases that Charvat cites in his complaint are insufficient, in light of *Culbreath*, to support Charvat's OCSPA claim relating to 47 U.S.C. § 227(b)(3)(A). *See* R.20 (2d Am. Compl. ¶ 57 n.2) (citing *Compoli v. EIP Ltd.*, No. 446780, at 1–2 (Ohio Ct. C.P. July 1, 2002) (Ohio Att'y Gen. Pub. Insp. File ("PIF") No. 085[14]); *Chambers v. R & C Delivery, Inc.*, No. 437887, at 1 (Ohio Ct. C.P. May 1, 2002) (PIF No. 2088)). Count Four, therefore, fails to state a claim under the OCSPA.

    However, Charvat also alleges that, during the telephone calls, Defendants failed to provide their name and telephone number or address, failed to maintain a record of his previous request to be placed on a do-not-call list, and failed to honor his previous do-not-call request. As the cases cited by Charvat in his complaint indicate, R.20 (2d Am. Compl. ¶ 57 n.2), Ohio courts have found that these violations of the TCPA are unfair or deceptive practices under the OCSPA. *See Charvat v. Cont'l Mortg. Servs., Inc.*, No. 99CVH12-10225, 2002 WL 1270183, at *5 (Ohio Ct. C.P. June 1, 2000) (PIF No. 1882). Charvat also alleges in Count Eleven that Defendants failed to state at the beginning of each call that the purpose of the call was to make a sale, in violation of O.A.C. § 109:4-3-11(A)(1) and/or 16 C.F.R. § 310.4(d)(2). Charvat includes in his complaint decisions in which Ohio courts have found that violations of these regulations are unfair or deceptive practices under the OCSPA. *See* R.20 (2d Am. Compl. ¶ 78 n.3) (citing *Ohio ex rel. Fisher v. Wykle*, No. 90-1395, at 4 (Ohio Ct. C.P. Apr. 8, 1992) (PIF No. 1141); *Ohio ex rel. Petro v. Craftmatic Org., Inc.*, No. 05-CVH-06-06060, at 13 (Ohio Ct. C.P. July 25, 2005) (PIF No. 2347); *Burdge v. Satellite Sys. Network, LLC*, No. 2005 CV F 00243, at 2 (Fairfield, Ohio Mun. Ct. May 11, 2005) (PIF No. 2344). We

---

    [14] The Ohio Attorney General's public inspection file is available at http://www.opif.ag.state.oh.us.

No. 10-3390          *Charvat v. NMP, LLC, et al.*                          Page 16

therefore reject Defendants' argument that Charvat's pleadings with respect to Counts
Five, Six, Nine, Ten, and Eleven are deficient under *Culbreath*.**15**

    The district court concluded that, although Charvat alleged multiple violations
of the OCSPA, Charvat was limited to one recovery per telephone call. R.53 (Dist. Ct.
Op. at 10) (citing *Charvat v. GVN Mich., Inc.*, 531 F. Supp. 2d 922, 928–29 (S.D. Ohio
2008), *aff'd on other grounds*, *GVN Mich.*, 561 F.3d 623). We believe, however, that
limiting recovery on a per-call basis is too narrow of a view of the OCSPA. Ohio courts
have limited the recovery of statutory damages when multiple violations occur in the
same transaction or cause the same injury. *See Charvat v. Ryan*, 858 N.E.2d 845, 856
(Ohio Ct. App. 2006), *overruled on other grounds*, 879 N.E.2d 765 (Ohio 2007); *Ferrari
v. Howard*, No. 77654, 2002 WL 1500414, at *7 (Ohio Ct. App. July 11, 2002); *Crye v.
Smolak*, 674 N.E.2d 779, 784–85 (Ohio Ct. App. 1996); *Couto v. Gibson, Inc.*, No. 1475,
1992 WL 37800, at *13 (Ohio Ct. App. Feb. 26, 1992) (unpublished decision); *Eckman
v. Columbia Oldsmobile, Inc.*, 585 N.E.2d 451, 452 (Ohio Ct. App. 1989). The Ohio
Court of Appeals has explained that

> where a supplier is found to have engaged in acts that constitute
> violations of separate rules or court rulings interpreting [Ohio Revised
> Code] 1345.02 or 1345.03, the consumer is entitled to $200 *per* violation
> or his or her actual damages for each violation, whichever is greater.
> This does not, however, preclude a court from finding that the facts are
> such that only one act occurred that resulted in only one violation or, . . .
> that two rules are so similar as applied to the facts that only one violation
> is found.

*Crye*, 674 N.E.2d at 784–85.

    In *Ryan*, 858 N.E.2d 845, the Ohio Court of Appeals analyzed whether separate
violations of the TCPA each constitute remediable violations of the OCSPA. The Ohio
court concluded that the technical standards for automated calls in 47 C.F.R.
§ 64.1200(b)(1) and (2)—which require disclosure of the name and telephone number

---

    **15**Moreover, Charvat may amend his complaint if discovery reveals that the automated messages
were in other ways deceptive, unfair, or unconscionable. *See* Fed. R. Civ. P. 15(a); *Tucker v. Union of
Needletrades, Indus., & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005).

of the caller, respectively—"are both directed at preventing the same harm, to wit, rendering the called party without means to contact the caller in order to stop future violative calls." *Ryan*, 858 N.E.2d at 856. In other words, "violations of these two regulations in fact cause[] a single injury." *Id.* The plaintiff therefore was entitled to only one award of $200 for both violations. *Id.* at 856–57. The Ohio court also held that the failure to maintain a written policy for maintaining a do-not-call-list, as required under 47 C.F.R. § 64.1200(d)(1), "cause[s] a separate and distinct harm" from violations of the technical standards in § 64.1200(b)(1) and (2), therefore supporting a separate damage award. *Ryan*, 858 N.E.2d at 857.

Applying the *Ryan* court's analysis of Ohio law, we conclude that Charvat is entitled to three separate damage awards under the OCSPA for the alleged violations. The alleged TCPA violations related to Defendants' failure to disclose their name and contact information (Counts Five and Six) caused the single injury of preventing Charvat from contacting Defendants to prevent future calls. Defendants' failure to maintain a record of Charvat's do-not-call request and failure to honor his request (Counts Nine and Ten) also caused a single injury—Charvat's receipt of calls after requesting to be placed on the do-not-call list. The two injuries, however, are separate and distinct, and Charvat therefore is entitled to separate damage awards for both injuries. Additionally, the disclosure provisions in O.A.C. § 109:4-3-11(A)(1) and 16 C.F.R. § 310.4(d)(2) are directed at a third distinct harm—deceiving the caller about the purpose of the call. Thus, Charvat is entitled to a separate damage award under the OCSPA for Count Eleven.

Because the alleged OCSPA violations caused three separate injuries, Charvat can recover three separate damages awards for the calls. Charvat therefore can recover a maximum total of $18,200 for his claims brought pursuant to the OCSPA: $6200 for the thirty-one calls in which Defendants failed to provide both their name and contact information, $6000 for the thirty calls in which Defendants failed to maintain a record of Charvat's do-not-call request and failed to honor the request, and $6000 for the thirty

No. 10-3390        *Charvat v. NMP, LLC, et al.*                        Page 18

calls in which Defendants failed to state at the beginning of each call that the purpose of the call was to make a sale.

### 3. Invasion-of-Privacy Claim

We next consider Charvat's challenge of the district court's determination that his state-law claim of invasion of privacy fails as a matter of law.  The district court concluded that the thirty-one prerecorded telemarketing calls, which were made during mid-day over a period of three months, "may have been annoying" but "do not constitute a plausible claim for an intrusion that would 'outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities' or that would be 'highly offensive to a reasonable person.'"  R.53 (Dist. Ct. Op. at 13) (quoting *Housh v. Peth*, 133 N.E.2d 340 syllabus para. 2 (Ohio 1956); *Sustin v. Fee*, 431 N.E.2d 992, 994 (Ohio 1982)).  We review de novo the district court's decision that the claim failed as a matter of law. *Saglioccolo*, 112 F.3d at 228.

Ohio recognizes the tort of invasion of the right to privacy for "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."  *Housh*, 133 N.E.2d syllabus para. 2.  The Ohio Supreme Court has looked to the Restatement (2d) of Torts to define the scope of liability for an intrusion-upon-seclusion claim:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

*Sustin*, 431 N.E.2d at 993–94 (citing Restatement (2d) of Torts § 652B (1977)).  When considering whether a defendant's telephone calls to the plaintiff are offensive or outrageous enough to support an actionable claim of invasion of privacy, Ohio courts have looked to a number of different factors, including the number of calls, the content of the calls, the time of day that the calls were made, and whether the calls were accompanied by other contacts with the plaintiff.

In *Housh*, the Ohio Supreme Court concluded that a defendant-creditor's conduct was actionable as an invasion of the plaintiff-debtor's privacy when the defendant

> initiate[d] a campaign to harass and torment the debtor, telephone[d] the debtor six or eight times every day at her home and place of employment—some of the calls as late as 11:45 p. m.—over a period of three weeks, telephone[d] the debtor's superiors and inform[ed] them of the debt, and call[ed] the debtor at her place of employment three times within a period of 15 minutes with a resultant threat of loss of employment.

133 N.E.2d syllabus para. 4; *accord id.* at 344.  In another example, the Ohio Court of Appeals concluded that a defendant-creditor's "collection tactics exceeded the bounds of reasonableness" when the defendant (1) "made forty and fifty phone calls to [the plaintiff-debtor]," asking "if he was 'related to Rodney King,' and call[ing] him a 'punk ass mother fucker' and 'faggot'"; (2) "called [the plaintiff-debtor's] sister and friend at least two times and informed them that a warrant had been issued for [his] arrest because of the bad checks"; (3) "called [the plaintiff-debtor's] landlord"; and (4) "sent his employer letters and faxes, concerning the debt."  *King v. Cashland, Inc.*, Nos. 18208, 99-1640, 2000 WL 1232768, at *2–3 (Ohio Ct. App. Sept. 1, 2000) (unpublished decision).

However, because "[a] creditor has a right to take reasonable action to pursue his debtor and persuade payment," *Housh*, 133 N.E.2d syllabus para. 3, we believe that it is important to distinguish instances in which a creditor is calling a debtor from instances in which a telemarketer is placing unsolicited calls to residential telephone subscribers. Indeed, Congress enacted the TCPA because consumers complained that unsolicited telemarketing calls, and in particular automated calls and messages, are "a nuisance and an invasion of privacy."  S. Rep. No. 102-178, at 2, 4–5, *reprinted in* 1991 U.S.C.C.A.N. 1968, 1969, 1972.  Thus, with respect to content, the Ohio Court of Appeals has concluded that, even when the content of the call or transmitted material is not objectionable, the unsolicited communication itself "is offensive and violative of the individual's right of privacy."  *Motorists Mut. Ins. Co. v. Dandy-Jim, Inc.*, 912 N.E.2d 659, 666 (Ohio Ct. App. 2009).

With respect to the number of calls, the Ohio Court of Appeals' decision in *Irvine v. Akron Beacon Journal*, 770 N.E.2d 1105 (Ohio Ct. App. 2002), indicates that alleging "hundreds of phone calls" is sufficient for an actionable claim, whereas alleging only two or three phone calls is not. *Id.* at 1112, 1114 (citing Restatement (2d) of Torts § 652B cmt. d, which states that "there is no liability for knocking on the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt"); *accord Misseldine v. Corporate Investigative Servs., Inc.*, No. 81771, 2003 WL 21234928, at *7 (Ohio Ct. App. May 29, 2003) (unpublished decision) ("A few phone calls do not constitute such wrongful intrusion."). The court of appeals in *Irvine* concluded that the trial court did not abuse its discretion in giving the following jury instruction, which quotes directly from the commentary in the Restatement (2d) of Torts:

> It is only when telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the Plaintiffs that becomes a substantial burden to his existence that the Plaintiffs' privacy is invaded.

770 N.E.2d at 1112 (alteration omitted) (internal quotation marks omitted); *see* Restatement (2d) of Torts § 652B cmt. d. Receiving thirty-one calls over the course of three months is certainly less intrusive than receiving "hundreds," but thirty-one calls would be significantly more offensive than receiving three or fewer calls. The threshold of when the number of calls becomes so persistent and frequent as to constitute "hounding" is not clearly delineated; we cannot say as a matter of law that thirty-one calls over three months does not constitute a substantial burden.

The court of appeals in *Irvine* also stated that "telephone calls need not be made at a certain time of the day to constitute an invasion of privacy." 770 N.E.2d at 1113. Therefore, the fact that the calls to Charvat were not made late at night or early in the morning does not necessarily preclude his claim.

Finally, we believe that the district court failed to consider an important fact: thirty of the thirty-one telephone calls were made after Charvat expressly requested to be placed on Defendants' do-not-call list. R.20 (2d Am. Compl. ¶ 86). Persisting in calling after this do-not-call request is more offensive to and likely to outrage a

reasonable person.  Considering all of the factual circumstances, we conclude that the
calls could outrage or be highly offensive to a reasonable person.  Therefore, we cannot
conclude that Charvat's invasion-of-privacy claim fails as a matter of law.  The damages
that Charvat has pleaded in good faith for the invasion-of-privacy claim thus may be
included in the determination of the amount in controversy for purposes of determining
jurisdiction.  *See* R.20 (2d Am. Compl. at 40).[16]

### 4. Attorney Fees

Finally, Charvat pleads damages of "at least $50,000" for attorney fees and costs,
pursuant to Ohio Revised Code § 1345.09(F).  R.20 (2d Am. Compl. at 40).  In *GVN
Michigan*, we noted that "reasonable attorney fees, when mandated or allowed by statute,
may be included in the amount in controversy for purposes of diversity jurisdiction."
561 F.3d at 630 n.5 (citing *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th
Cir.), *cert. denied*, 552 U.S. 1042 (2007)).  Ohio Revised Code § 1345.09(F) provides
that "[t]he court may award to the prevailing party a reasonable attorney's fee limited
to the work reasonably performed, if . . . [t]he supplier has knowingly committed an act
or practice that violates [Chapter 1345]."  The Ohio Supreme Court has further clarified
that, "to establish a knowing violation of [Ohio Revised Code] 1345.09, for an award of
attorney fees, a plaintiff need prove only that the defendant acted in a manner that
violated the CSPA and need not prove that the defendant knew that the conduct violated
the law."  *Charvat v. Ryan*, 879 N.E.2d 765, 772 (Ohio 2007).  Nevertheless, even if a
plaintiff demonstrates a knowing violation of Chapter 1345, "[t]he trial court has the
discretion to determine whether attorney fees are warranted under the facts of each
case."  *Id.*

---

[16]Charvat alleges compensatory damages of "at least $75,000," punitive damages of "at least
$75,000," and attorney fees and costs of "at least $50,000."  R.20 (2d Am. Compl. at 40).  In *Echostar*,
we questioned whether Charvat's pleading for punitive damages was sufficient under Ohio tort law.  630
F.3d at 462–63 (citing Ohio Rev. Code Ann. § 2315.21(C)(1); *Moskovitz v. Mt. Sinai Med. Ctr.*, 635
N.E.2d 331 (Ohio 1994)).  Whether Charvat can recover attorney fees for his invasion-of-privacy claim
depends on whether he is entitled to punitive damages.  *See Zappitelli v. Miller*, 868 N.E.2d 968, 969
(Ohio 2007) ("Without a finding of malice and the award of punitive damages, plaintiff cannot justify the
award of attorney fees." (internal quotation marks omitted)).  Because it is clear that, even without the
alleged punitive damages and attorney fees for his invasion-of-privacy claim, the total of Charvat's claims
"exceeds . . . $75,000," 28 U.S.C. § 1332, we need not and do not address the legal certainty of Charvat's
pleaded punitive damages and attorney fees.

Even when attorney fees are permitted by statute, as in this case, some courts have not counted such fees towards the amount-in-controversy requirement if "speculative," for example "future or discretionary or unreasonable fees." 14AA Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3702.5 (4th ed. 2011). The district court discussed the different ways in which courts have analyzed attorney fees and indicated that "[u]nder the standard most generous to [Charvat], the Court must estimate the reasonable attorney's fees *likely to be incurred* in prosecuting the case." R.53 (Dist. Ct. Op. at 15). The district court concluded that, "[e]ven applying this standard, . . . [Charvat] is not likely to incur reasonable fees of $22,300"—the amount that the district court calculated as necessary for Charvat to reach $75,000 given its conclusions that Charvat could recover a maximum of $46,500 under the TCPA and $6200 under the OCSPA.[17] *Id.* at 15 & n.5. However, because it is clear from our analysis above that Charvat's total claims exceed $75,000, we need not and do not address how to determine the amount of attorney fees that can be included when calculating the amount in controversy.

For the reasons explained above, we conclude that Charvat's total alleged claims exceed $75,000, as required for diversity jurisdiction. The district court thus erred in concluding that it lacked diversity jurisdiction over Charvat's claims.

### III. CONCLUSION

Pursuant to our decision in *Echostar*, 630 F.3d 459, we conclude that the district court erred in determining that federal courts lack federal-question jurisdiction over private TCPA claims. Additionally, because Charvat has alleged claims totaling more than $75,000, we conclude that the district court erred in determining that it did not have diversity jurisdiction over Charvat's state-law claims. Accordingly, we **REVERSE** the district court's dismissal for lack of subject-matter jurisdiction, and we **REMAND** for further proceedings consistent with this opinion.

---

[17]Because the diversity-jurisdiction statute requires the amount in controversy to "exceed[]" $75,000, 28 U.S.C. § 1332, we note that Charvat would still be "one penny short." *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 252 (6th Cir. 2011).

No. 10-3390          *Charvat v. NMP, LLC, et al.*                    Page 23

———————————————————————

## CONCURRING IN THE JUDGMENT

———————————————————————

ALICE M. BATCHELDER, Chief Judge, concurring in the judgment.  I agree with the majority that federal question jurisdiction exists over private claims brought under the TCPA and that the district court erred in holding otherwise.  *See Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 631-32 (6th Cir. 2009).  I also agree with the majority's conclusion that the district court erred when it determined that it lacked diversity jurisdiction.  However, I cannot join the majority's discussion regarding the question of whether Charvat may recover under both 47 U.S.C. §§ 227(b) and (c) for violations that occurred during a single phone call.  The parties themselves have neither raised nor argued this issue, and the district court did not even mention it.[1]  We therefore ought not address or resolve this particular question.

I would also note that the district court's resolution of Charvat's invasion of privacy claim is a procedural anomaly.  "The test for whether the jurisdictional amount has been met considers whether the plaintiff can succeed on the merits only in a very superficial way."  *Kovacs v. Chesley*, 406 F.3d 393, 396 (6th Cir. 2005).  Although it purported to apply the "legal certainty" test, the district court clearly judged the merits of Charvat's claim rather than merely assessing whether he could assert it in good faith.  The district court's evaluation of the merits of Charvat's invasion of privacy claim is inconsistent with that court's simultaneous assertion that it lacked subject matter jurisdiction.  *Cf. Dawalt v. Purdue Pharma, L.P.*, 397 F.3d 392, 403 (6th Cir. 2005).  Although I agree with the majority's conclusion that Charvat has pleaded this claim in good faith and that the damages he seeks should count toward the amount in controversy

———————————————————————

[1]In fact, Charvat has explicitly disclaimed any reliance on § 227(c) for recovery.  It is true, as the majority points out, that Charvat has mislabeled some of the alleged violations as arising under § 227(b), as the regulations that he cites were enacted pursuant to § 227(c); however, that error is irrelevant to the fact that neither party has made any arguments with respect to whether a plaintiff should be able to recover under both § 227(b) and § 227(c) for violations occurring during a single phone call.

No. 10-3390          *Charvat v. NMP, LLC, et al.*                    Page 24

for purposes of determining diversity jurisdiction, I do not join the majority's broader discussion of the issue.

Because it is clear that Charvat has in good faith pled damages exceeding $75,000, I believe that any further discussion of the specific claims is neither necessary nor appropriate, and I would simply remand the matter to the district court for further proceedings.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 10-3390

PHILIP J. CHARVAT,

      Plaintiff - Appellant,

   v.

NMP, LLC, a Delaware Limited Liability Company; MEDIA SYNERGY GROUP,
LLC, a Virginia Limited Liability Company,

      Defendants - Appellees.

```
┌─────────────────────────────┐
│           FILED             │
│                             │
│       Aug 30, 2011          │
│                             │
│     LEONARD GREEN, Clerk    │
└─────────────────────────────┘
```

Before: BATCHELDER, Chief Judge; GUY and MOORE, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was submitted on
briefs without oral argument.

IN CONSIDERATION WHEREOF, it is ORDERED that the district court's
dismissal for lack of subject-matter jurisdiction is REVERSED, and the case is
REMANDED for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

_____

Leonard Green, Clerk

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Leonard Green
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  August 30, 2011

Mr. William R. Baldwin III
Marchant, Thorsen, Honey, Baldwin & Meyer, LLP
5600 Grove Avenue
Richmond, VA 23226

Mr. Eric Benjamin Gallon
Porter, Wright, Morris & Arthur
41 S. High Street
Suite 3200
Columbus, OH 43215

Mr. James B Hadden
Porter, Wright, Morris & Arthur
41 S. High Street
Suite 3200
Columbus, OH 43215

Mr. Anthony Ross McClure
Porter, Wright, Morris & Arthur
41 S. High Street
Suite 3200
Columbus, OH 43215

Re:  Case No. 10-3390, *Philip Charvat v. NMP, LLC, et al*
Originating Case No. 09-00209

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Leonard Green, Clerk


Linda K. Martin
Deputy Clerk

cc:  Philip J. Charvat

Enclosures

Mandate to issue.