IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Philip J. Charvat,

    Plaintiff,

v.

NMP, LLC, et al.,

    Defendant.

Case No. 2:09-cv-209
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kemp

## OPINION AND ORDER

This case is before the Court for consideration of Plaintiff Philip J. Charvat's renewed motion for default judgment (Doc. 81). For the following reasons, the Court grants Mr. Charvat a default judgment in the amount of $73,000.00.

I.

The Court issued an order on July 3, 2012, denying a prior motion for default judgment without prejudice. *See Charvat v. NMP, LLC,* 2012 WL 2577489 (S.D. Ohio July 3, 2012). The procedural history of the case, leading up to the default entered against defendant Media Synergy Group LLC, is set out in detail in that order. The key issue raised by the renewed motion for default judgment is whether the Court should award Mr. Charvat the amount he seeks, $138,400.00, or some lesser amount. In order to answer this question, the Court must review the complaint, the applicable statutory provisions, and the case law describing the extent to which the Court has discretion to award various amounts of statutory damages under each of the three statutory provisions under which Mr. Charvat's claims arise.

II.

## A. The Factual Allegations in the Third Amended Complaint

The current pleading which frames the issues for purposes of the default judgment motion is the Third Amended Complaint which was filed on February 7, 2012. According to that complaint, defendants first called Mr. Charvat, on his residence telephone, on September 12, 2008. The call was a "prerecorded voice message telemarketing call ...." *Third Amended Complaint*, ¶11. He claims that the call was made without his permission or invitation; that the caller did not state his or her name; and that the caller did not provide a telephone number or address where he or she could be contacted. *Id*. Between that date and September 20, 2008, defendants made six more calls to Mr. Charvat's telephone, all placed by a "live agent." During the last of these six calls, Mr. Charvat told the caller that he would call back if he were interested in their services, but that they were not to call him. He asserts that this statement was sufficient to advise defendants to place his number on their "Do-Not-Call" list. *Complaint*, ¶s 12-18.

Four days later, Mr. Charvat received another prerecorded voice call from defendants. He asserts that this call violated his request not to be called, also did not state the caller's name "as registered with the Ohio Secretary of State," and failed to state at the outset that the purpose of the call was to try to sell him defendants' products or services. *Complaint*, ¶18. He subsequently received 43 more such calls, the last one coming on December 10, 2008. *Complaint*, ¶s 19-61. Thus, the complaint alleges the placement of 44 telephone calls after Mr. Charvat's September 20, 2008 request not to be called again. He seeks various types of statutory damages for each of these calls.

2

### B. The Telephone Consumer Protection Act - 47 U.S.C. §227(b)(1)(B)

The first statutory violation alleged in the complaint involves 47 U.S.C. §227(b)(1)(B), a provision of the Telephone Consumer Protection Act (TCPA). That statutory section makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B) ...." Paragraph (2)(B) exempts all calls "not made for a commercial purpose" and some calls made for a commercial purpose so long as those calls "(I) will not adversely affect the privacy rights that this section is intended to protect; and (II) do not include the transmission of any unsolicited advertisement ...."

As alleged in the complaint, the prerecorded calls made to Mr. Charvat do not come within these exemptions. He asserts that the first call, and the eighth through fifty-first calls, all violate §227(b)(1)(B). By its default, Media Synergy Group LLC has admitted his factual allegations, and the Court concludes that the Third Amended Complaint properly asserts a claim for 44 violations of that statutory provision.

Under 47 U.S.C. §227(b)(3)(B), a person whose rights under this statutory subsection have been violated is entitled to "actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater," and, if the violation is willful or knowing, "the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times" that amount. 47 U.S.C. §§227(b)(3)(C). In his motion for default judgment, Mr. Charvat has asked for the maximum amount of $1,500.00 for each of these 44 violations. He argues that the Court should award the maximum amount because Media Synergy

3

Group's actions were clearly knowing and willful, and calls which did not contain the required content and which were unsolicited continued to be made even after that company agreed to abide by Mr. Charvat's request not to call him again. The total award for these violations would, if Mr. Charvat's prayer for relief is granted, amount to $66,000.00.

### C. The Telephone Consumer Protection Act - 47 U.S.C. §227(c)(5)(A)

Counts Two, Three and Four of the Third Amended Complaint all allege violations of 47 U.S.C. §227(c)(5)(A). That statutory subsection creates a private right of action in favor of any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection ...." According to the complaint, the 44 calls in question were placed in violation of multiple regulations prescribed under subsection (c)(5)(A), including 47 C.F.R. §§64.1200(d)(3) and (d)(4). Those regulations include the "Do-Not-Call" list provisions and also requirements that telemarketers "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

Again, the complaint alleges facts which, if true (and the Court must assume they are), show that Media Synergy Group violated one or more of these regulatory provisions when it made 44 calls to Mr. Charvat after he requested that the calls cease, and did not include certain required information in those calls. The Court therefore concludes that the Third Amended Complaint adequately alleges 44 violations of 47 U.S.C. §227(c)(5)(A).

As the Court explained in its July 3, 2012 Opinion and Order, the damage provision which accompanies §227(c)(5)(A) is worded slightly differently from the one which accompanies

4

§227(b)(1)(B). 47 U.S.C. §227(c)(5)(B) permits a person whose rights under the various regulations have been violated to bring "an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater." Thus, it sets no floor for statutory damages. Like §227(b)(1)(B), it permits the Court to treble the damage award for willful or knowing violations. Mr. Charvat's argument for the maximum amount of damages ($500 trebled) is essentially the same - that the violations were knowing and willful and that there is no excuse for a sophisticated telemarketing firm to have violated such basic regulations concerning its marketing activity. If that argument were accepted, the damages for these 44 violations would also total $66,000.00.

### D. The Ohio Consumer Sales Practices Act - Ohio Rev. Code §1345.02(A)

Lastly, the Third Amended Complaint alleges that Media Synergy Group's violations of federal law (and certain violations of the Ohio Administrative Code) constitute unfair or deceptive acts or practices in violation of Rev. Code §1345.02(A). Assuming the allegations of the complaint to be true, it does adequately plead a violation of that statute as well. *See Charvat v. NMP, LLC*, 656 F.3d 440, 451 (6th Cir. 2011) (holding that the allegations that the defendants in this case "failed to provide their name and telephone number or address, failed to maintain a record of his previous request to be placed on a do-not-call list, and failed to honor his previous do-not-call request" stated three independent violations of the Consumer Sales Practices Act).

The remedies for violations of the CSPA are set out in Ohio Rev. Code §1345.09. For the violations alleged in the complaint, Mr. Charvat may "recover ... three times the amount of [his] actual economic damages or two hundred dollars, whichever is greater ...." Rev. Code §1345.09(B). Because the complaint asserts three independent violations during the course of 44

5

telephone calls, the damages available under the Ohio statute would be $26,400.00. In all, Mr. Charvat seeks judgment in the amount of $138,400.00, which is derived by adding the maximum damages available under each of the three statutes ($66,000.00 each for the two TCPA violations, for a total of $132,000.00, and another $26,400.00 for the CSPA violations, for a total of $158,400.00) less $20,000.00 he has received in settlement from the other defendant. The question presented is whether judgment should be entered in that amount, or for some lesser sum.

III.

The Court begins with the logical starting point, which is determining the smallest permissible judgment which could be entered, and then deciding what factors, if any, counsel in favor of an increase in that amount. Again, as the Court spelled out in the July 3, 2012 Opinion and Order, two of the three statutory sections at issue here prescribe a minimum amount of damages (in the absence of proof of actual damages). 47 U.S.C. §227(b)(3) has a $500.00 floor; Ohio Rev. Code §1345.09(B) has both a floor and a ceiling of $200.00 per violation, which translates into $600.00 for this case. Because the third statutory subsection, 47 U.S.C. §227(c)(5)(B), allows for damages "up to" $500.00, the floor for that provision could be deemed to be zero. Thus, if the Court were to award the minimum amount available under the two federal provisions, and the $26,400 available under Ohio law, that would produce a judgment in the amount of $28,400.00 (44 times $500.00, or $22,000, plus $26,400.00, less the $20,000.00 offset from the other defendant). The judgment range in this case is therefore between $28,400.00 and $138,400.00, a considerable spread. The two categories of variables are (1) how much, up to the statutory maximum of $500.00, should the Court award on the claim under §227(c)(5)(B); and (2) whether the Court should treble the damage awards under either

6

§227(b)(3) or §227(c)(5)(B). The Court will address these two questions in that order.

## A. The Untrebled Award under §227(c)(5)(B)

There do not appear to be any reported federal cases which discuss the factors to be considered when deciding on a damage award under §227(c)(5)(B). This Court has held, at least with respect to the "do-not-call" provision of the regulations at issue, that "the purpose of the statute is to prevent repeated unwanted telemarketing calls by punishing those telemarketers who fail to honor do-not-call requests." *Chavrat v. Echostar Satellite, LLC*, 621 F.Supp. 2d 549, 560 (S.D. Ohio 2008)(Holschuh, J.), *citing Charvat v. GVN Michigan, Inc.*, 531 F.Supp.2d 922, 926 (S.D. Ohio 2008)(Marbley, J.). That purpose is relevant to a damages determination because, in awarding damages, a court must be mindful of how that award comports with the purpose of the statute. This inquiry, under other, similar statutes giving the Court discretion to award damages, can involve criteria such as "the severity or minimal nature of the violation; whether there was actual damage to the victim; the extent of any intrusion into the victim's privacy; the relative financial burdens of the parties; whether there was a reasonable purpose for the violation; and whether there was any useful purpose to be served by imposing the statutory damages amount." *See DirecTV v. Rawlins*, 523 F.3d 318, 325-26 (4th Cir. 2008)(interpreting the Wiretap Act, 18 U.S.C. §2511). Some statutes, like the Fair Debt Collection Practices Act, actually list the relevant factors (although the TCPA does not). *See* 15 U.S.C. §1692k(b)(requiring the Court to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional ..."). Using the case law and statutory law concerning similar provisions as guidance, the Court will take these various factors into account to the extent they can be gleaned from the record in this case.

7

According to the complaint, Mr. Charvat made his request not to be called again in the course of a telephone call which occurred on September 24, 2008. At that time, he was speaking to a "live agent" of one of the defendants, and allegedly made this statement: "I'll give you a call back if we're interested but don't call, okay?" *Third Amended Complaint*, ¶17. He then asserts that defendants failed to record his name or telephone number on their Do-Not-Call list. *Id*. After that date, beginning just four days later, they made 44 more calls to his residence in a period of about two-and-a-half months. It does not appear that, at any time, Mr. Charvat made any attempt to stop those calls from occurring in violation of his request not to be called.

There are competing policy concerns here. While the Act itself is concerned with consumer privacy interests, the regulation which Mr. Charvat claims was violated does allow a grace period for placing a consumer's name on an individual telemarketer's do-not-call list. "Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request." 47 C.F.R. §64.1200(d)(3). Calls eight through nineteen were made in the thirty-day period following Mr. Charvat's request. Further, there is a national do-not-call registry, but Mr. Charvat does not allege he placed his name on this registry, indicating that he was open to receiving some unsolicited marketing calls. There is no allegation of actual damage. On the other hand, there is nothing to show that Media Synergy had any purpose for violating the law; its conduct is precisely the type of conduct which Congress and the FTC intended to prohibit and punish; and the complaint alleges other violations as well with respect to these calls, not just that they were made in violation of the request not to be called in the future.

8

Taking all of these matters into consideration, the Court concludes that, for at least the twelve calls made between September 24, 2008 and October 18, 2008, a relatively modest statutory damage award is appropriate. The Court will award Mr. Charvat $50.00 in statutory damages for each of these calls. As to the 32 calls made after the thirty-day grace period expired, the Court awards $250.00 in statutory damages per call. The amount of this award is influenced in part by the fact that Mr. Charvat will be receiving substantial additional statutory damages for these same calls under the TCPA and the OCSPA. Thus, the total non-trebled award under §227(c)(5)(B) will be $8,600.00.

B. Treble Damages under the TCPA

The Court must now consider whether to treble the mandatory damage award of $22,000.00 which is being made under §227(b)(3) and any of the discretionary award being made under §227(c)(5)(B). Again, from the allegation made in the complaint, it is a fair inference that all of the violations here were either knowing or willful, so that the prerequisite for awarding treble damages is present. *See, e.g., Stewart v. Regent Asset Management Solutions*, 2011WL 1766018 (N.D. Ga. May 4, 2011); *Charvat v. Ryan*, 116 Ohio St.3d 394 (2007). Although, as the *Stewart* court noted, there is some split of authority on exactly what a defendant must know before it can be said to have violated the TCPA knowingly or willfully, the Court need not resolve that dispute here because Media Synergy has not contested the allegations in the complaint.

Courts have applied various tests for deciding when trebling the statutory damage award is appropriate. For example, in *Harris v. World Financial Network Nat. Bank*, --- F.Supp.2d ----, 2012 WL 1110003, *8 (E.D. Mich. April 3, 2012), the court awarded treble damages based on

9

evidence that the defendant had "displayed a reckless disregard for Plaintiff's rights under the TCPA." In *Versteeg v. Bennett, DeLoney & Noyes, P.C.*, 839 F.Supp.2d 1238 (D. Wyo. 2011), the court appeared to base its trebling of damages on a finding of pervasive illegal conduct. Standing somewhat in contrast to these cases, which focus on the wrongfulness of the defendant's conduct, the court in *Alea London Ltd. v. American Home Services, Inc.*, 638 F.3d 768 (11th Cir. 2011), suggested, albeit in *dictum*, that the purpose of the treble damages provision of the TCPA was more compensatory than punitive, and designed as an additional incentive for aggrieved parties to file suit since their actual and basic statutory damages were likely to be minimal.

Here, given the large number of violations, the statutory damage awards under the three separate statutory provisions can hardly be described as minimal. In a case where the actual damage is limited to some annoyance and wasting of the consumer's time, Mr. Charvat will obtain, even without trebling, a judgment in the amount of $57,000.00. And because that is much less than the maximum potential recovery from both defendants, the Court does not believe that it is appropriate to offset the judgment he obtained by consent from the other defendant. In this particular case, no further incentive was needed in order to enable Mr. Charvat to bring suit. On the other hand, the violations of the do-not-call regulation seem especially egregious, at least after the thirty-day grace period elapsed. The Court will therefore treble the damages awarded under §227(c)(5)(B) for the 32 calls made after that date. That results in an additional award of $16,000.00 (the basic damage award on those counts was $250.00, so trebling that amount results in an additional $500.00 in damages per count). All told, the judgment which the Court finds appropriate is $73,000.00, which is not subject to offset.

10

IV.

Based on the above discussion, the Court **GRANTS** the motion for default judgment (doc. 81) and **FINDS** that Mr. Charvat is entitled to statutory damages of $22,000.00 for 44 violations of 47 U.S.C. §227(b)(3); statutory damages of $24,600.00 for 44 violations of 47 U.S.C. §227(c)(5)(A), and statutory damages of $26,400.00 for 44 violations of the Ohio Consumer Sales Practices Act, for a total of $73,000.00. The Clerk shall enter a judgment in his favor and against defendant Media Synergy Group, LLC, in that amount, and shall terminate this case.

**IT IS SO ORDERED.**

9-27-2014
DATE

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**